HEARD NOV. TERM, 1871.

## CAMPBELL *vs.* BANK OF CHARLESTON.

Under a bill in Equity, to which C., executor of F., and others were parties, an order was made that C. do deliver and transfer to a Master of the Court, the cash in his hands, and certain named securities of the estate, and "that thereupon he be discharged from all further accountability and liability whatever, as executor of F. C., as executor, held at the time certain shares of bank stock, the certificates of which stood in his name, which were transferable only on the books of the bank, and which were not amongst the securities named in the order. The shares were afterwards transferred on the books of the bank to *bona fide* purchasers of the certificates thereof, on a certificate of the Judge of Probate, that C. had leave to sell and transfer the same. A. was then appointed receiver of F.'s estate in place of the Master, and he brought this action against the bank to compel it to issue to the plaintiff, as receiver, certificates of the stock, in F.'s name, or to pay its value: *Held,* That the bank was not liable.

A Court of Equity has no power to discharge an executor from his office as executor, or even from liability to account, except so far as the parties, and the subject-matter of the suit in which the order is made, are concerned.

BEFORE GRAHAM, J., AT CHARLESTON, APRIL TERM, 1871.

Action by Lawrence F. Campbell, Receiver, against the Bank of Charleston,. to recover certain shares of capital stock of the bank, or their value.

The appeal was heard on a case and exceptions containing the following statement of the facts established by the testimony.

John L. Francis was possessed of fifty whole and fifty half shares of the capital stock of the Bank of Charleston, the original certificates of which, dated in January, 1848, certified "that John L. Francis is entitled to" (stating the number) "shares in the capital stock of the Bank of Charleston, South Carolina, transferable only on the books of the said bank by John L. Francis, or his attorney."

John L. Francis died in 1865. By his will, he appointed C. R. Carroll his executor.

C. R. Carroll duly qualified. In 1866, Carroll came to Charleston, and in presence of G. L. Buist, as witness, endorsed the stock as executor in blank. The stock thus endorsed was delivered to Messrs. Buist & Buist, who were the attorneys of the executor.

On the 17th June, 1868, the following decretal order was made in the cause of *Carroll, Executor,* vs. *Grace Allston et al.*: (1 S. C., 7.)

"After hearing read the report of Master Gray, it is ordered and decreed that the same be confirmed.

"It is further ordered that the said complainant do forthwith transfer and deliver to the said Master, the amount in cash remain-

ing in his hands, and also the following assets and securities remaining in his hands, to wit: Three thousand (3,000) dollars six (6) per cent. coupon bonds of the State of South Carolina; four thousand three hundred and ten (4,310) dollars of City of Charleston six (6) per cent. stock; seventeen (17) half shares of the Southwestern Railroad and Bank Stock; one hundred (100) shares of Gas Light Company Stock; bond of Berith Shalom Congregation for nine hundred (900) dollars; bond of Francis B. Fishburne for five hundred (500) dollars; and bond of Francis F. Carroll for three hundred (300) dollars; and that thereupon he be discharged from all further accountability and liability whatever as executor of John L. Francis, deceased."

Subsequently the plaintiff was substituted as Receiver in the place of Master Gray.

In June, 1869, the stock of the Bank of Charleston was delivered by Messrs. Buist & Buist to Messrs. Whaley, Mitchell & Clancy, who were the attorneys of legatees under the will of Francis.

In October, 1869, the stock was brought to the Bank of Charleston to be transferred; part to H. H. DeLeon, Esq., and part to Messrs. G. A. Trenholm & Son.

The bank declined to make the transfer until certificate from the Judge of Probate was obtained that the executor was authorized to transfer. The following certificate was presented:

"THE STATE OF SOUTH CAROLINA, }    In the
    "CHARLESTON COUNTY.    }  Court of Probate.

"By GEORGE BUIST, Esq., Probate Judge.

"On due consideration of the petition of Charles R. Carroll, of Barnwell County, tanner, qualified executor of the last will and testament of John L. Francis, late of Charleston, barber, deceased, it is hereby ordered that he have leave to sell and transfer, personally or by attorney, in the proper books of the institution, to and in the name of any person designated, fifty-three whole and fifty-three half shares in capital stock of the Bank of Charleston, contained in certificates issued in the name of said John L. Francis, and belonging to said estate, as set forth in proceedings to effect settlement by petition filed, and file the account sales thereof for record in this Court. Terms of sale, cash.

"Given under my hand and seal of office, at Charleston, this twenty-eighth day of October, A. D. 1869.

[Signed]    "GEORGE BUIST, [L. s.]
    "Probate Judge."

And thereupon, in December, 1869, the bank transferred the stock.

It was further in evidence that, according to the custom of trade, certificates of stock thus endorsed in blank are transferable by delivery; that the *bona fide* holder of stock thus endorsed is regarded as the owner; that the sale of such stock, or the pledge of it by the holder as collateral, is of daily occurrence; and that stock thus endorsed in blank may pass from owner to owner for years before it is brought to the bank to be transferred to the name of the then holder.

Certified copies of the accounts of Carroll, executor, and Gray, trustee, were put in evidence, showing that the stock was never accounted for by either of them.

There was no evidence of any notice to the Judge of Probate that the power of the executor had ceased, and no notice to the bank not to transfer.

It was admitted that Messrs H. H. DeLeon and G. A. Trenholm & Son were *bona fide* holders for value without notice.

G. L. Buist, a witness for plaintiff, was then sworn, and testified :

That he is of the firm of Buist & Buist, who were Attorneys for the executor, Carroll; that Mr. Carroll came to Charleston early in 1866, and, in the presence of witnesses, endorsed in blank all the securities belonging to the estate of Francis, and among them these certificates of Charleston Bank Stock; that this was done merely for the convenience of Mr. Carroll, who was old and feeble, and lived out of Charleston County, and intended leaving all the business of the estate to Messrs. Buist & Buist, and leaving the securities in their hands; that he endorsed the certificates as witnesses of Mr. Carroll's signature at this time; that these certificates, and certificates of other banks, were not mentioned in the decree transferring assets to Mr. Gray, because they were esteemed, at that time, utterly worthless; that these certificates remained in their office for one year after the discharge of Mr. Carroll by the Court; that, as a matter of fact, they never were transferred by Mr. Carroll to any one; that on the 9th day of June, A. D. 1869, the firm of Messrs. Buist & Buist, at the request of Messrs. Whaley, Mitchell & Clancy, delivered these certificates to these gentlemen, and took their receipt therefor, as they represented the residuary legatees.

Upon these facts the Court instructed the Jury that the certificate of the Judge of Probate was illegal, and therefore void, and was no

protection to the Bank of Charleston in the transfer of the stock; that the Bank of Charleston had constructive notice of the illegality; that, when the transfer was first applied for, without the certificate of the Judge of Probate, and the bank requiring such a certificate before they would make the transfer, they were put upon their guard; that there never was any sale of stock by Carroll, the executor; that he had ceased to be the executor for more than twelve months when the order of the Judge of Probate was obtained for the sale of the stock. The Jury were instructed to find their verdict for the plaintiff; to which instructions the defendant excepted, on the following grounds, viz:

1. That the scrip was on its face legal, and properly endorsed, and that the bank was not affected with notice of any equities, and was bound to transfer to the party holding the scrip properly endorsed.

2. That the order of the Court of Probate was authority to the bank to transfer.

3. That the transfer by the bank was legal, and the remedy of the plaintiff is against other parties, and not the bank.

*Porter* and *Conner*, for appellant:

On the death of Francis, all his personal estate vested in Carroll, the executor.—1 Wil. on Ex'ors, 546; *Seabrook* vs. *Williams*, 3 McC., 371.

The endorsement by the executor, as legal owner, was essential to the transfer of the stock by the bank.

The scrip was endorsed regularly by the executor, at a time when he was in full exercise of his powers, as executor.

Was delivered by the executor to his attorneys; by them delivered to the attorneys of the legatees; by them sold, &c.

A *bona fide* holder presents the stock to the bank for transfer. Could the bank refuse to transfer?

A corporation is bound to transfer stock to an assignee duly authorized, unless they hold some claim against it or are restrained by the injunction of a competent Court.—*Purchase* vs. *N. Y. Exchange Bank*, 3 Rob., 164, cited Abbot's Digest—Stock, § 194.

The company are "but instruments and conduit pipes."—2 P. W., 77.

When the required evidence is produced, the corporation is bound to permit the transfer, and is liable in damages to the full

value of the stock, for refusing.— *Commercial Bank* vs. *Kortright,* 22 Wend., 348.

" To restrict directly or indirectly the right of having a transfer on the books, to those who, in addition to the *prima facie* proof of property, can show an undisputed ownership in themselves, and not merely a qualified right or interest, would be contrary to the intent of the charter, the necessities of business, and even to reason and justice. It would cut off trustees and assignees, as well as prevent the common and very convenient practice of *bona fide* stock loans." 22 Wend., 363 ; *Smith* vs. *Northampton Bank,* 4 Cush., 1 ; Morse on Banking, 166.

The provision of charter, that stock is transferable only on books of bank, is for the benefit of the bank, and its protection.—Angell on Corporations, § 575 ; *Union Bank* vs. *Laird,* 2 Wheat., 390 ; *Black* vs. *Zacharie,* 3 How., 513 ; *State Bank* vs. *Cox,* 11 Rich. Eq., 348.

The bank cannot look behind the legal title. It must recognize the holder who comes with the muniments of title.—*Davis* vs. *Bank of England,* 2 Bing., 403, (19 E. C. L.); *Franklin* vs. *Bank of England,* 9 B. & C., 156 ; *Bank of England* vs. *Parsons,* 5 Ves., 669 ; *Hartga* vs. *Bank of England,* 3 Ves., 58.

"All that could be required of the person demanding a transfer on the books, would be to prove to the corporation his right to the property. In this case, one of the joint assignees, produced the assignments, with the original certificate of the former owners, and claimed for himself and his partner to be the purchasers for valuable consideration. We think that was a sufficient notice of the assignment, and request to have the transfer made upon the books of the corporation."—*Sargent* vs. *Franklin Ins. Co.,* 8 Pick, 96 ; Angell on Corporations, § 581 ; *State Bank* vs. *Cox,* 11 Rich. Eq., 344, 348, 350.

As between vendor and vendee, the title passes by delivery of the scrip properly endorsed.—Angell on Corporations, §§ 564, 565 ; *Commercial Bank* vs. *Kortright,* 22 Wend., 348.

" The delivery of the certificate with an endorsement upon it, for a valuable consideration, was a sufficient transfer of the right to become a stockholder to the amount specified in the certificate."— *Quiner* vs. *Marblehead Ins. Co.,* 10 Mass., 482.

A transfer, though not upon the books of the bank, is sufficient to divest the title of vender.—Ibid ; *N. Y. and N. H. R. R. Co.* vs.

*Schuyler*, 34 N. Y., 80; *Sargent* vs. *Franklin Ins. Co.*, 8 Pick., 90; 11 Wend., 628; 2 Cowen, 777; *Black* vs. *Zacharie*, 3 How., 513.

But it is claimed that, when the transfer was made, the executor's right to transfer had ceased.

Reply, 1st. The disposal of the stock, by the executor, was before his power over the estate ceased.

2nd. That quoad this stock, his powers never were revoked.

In addition to the legal right, growing out of the relation of parties, the bank acted under order of Court of competent jurisdiction.

*Chamberlain & Seabrook*, contra:

It is contended that the order of the Judge of Probate, being directed to Carroll, fifteen months after his discharge, was directed to a stranger; that the Court of Probate has no jurisdiction to confer power to sell, upon a stranger, but only upon an executor, or administrator; that this order therefore was void; that the order being void, the transfer was illegal; that, the transfer being illegal, no change of property took place, and the bank was liable to the plaintiff.

I. Carroll was a stranger.

It may be contended that the decree of the Court of Chancery, discharging the executor, was contrary to the policy of our law. But still it is a decree, and stands until assailed by appeal, or bill of review.

"A decree cannot be incidentally assailed, but is conclusive as to the rights and liabilities of the parties, until reversed by the Appellate Court, or impeached by an original bill for fraud in obtaining it, or attacked for palpable error by bill of review."—2 Dan. Ch. Pl. and Pr., 1000, note; *Sanders* vs. *Gatewood*, 5 J. J. Marsh, 328; *Watson* vs. *Williams*, 8 Ired. Eq., 232; *Gardiner* vs. *Niles*, 5 Gill., 94; *Hunter* vs. *Huttan*, 4 Gill., 115; *Kidd* vs. *Cheyne*, 23 Eng. L. and Eq. Rep., 501; *Attorney General* vs. *Croft*, 7 Eng. L. and Eq. Rep., 292.

II. The Court of Probate had no jurisdiction to order a stranger to sell the property of the estate.

No authority need be advanced on this point. It is sufficient to say that no such power is given in any of the various statutes of the State, relating to Courts of Ordinary or Courts of Probate. No such practice has ever prevailed.—See 6 Stat., 238; *Jones* vs. *McNeill*, 1 Hill, 84.

III. " The proceedings of a Court of limited jurisdiction, in a case clearly without its jurisdiction, are absolutely void, and may be so declared, whenever the question is· presented, whether directly or collaterally."—*Hill* vs. *Robertson*, 1 Strob., 1.

Observe that in this case a decree of a Court of Ordinary was in question. The Court disposes of the question with brevity almost contemptuous.

"It would be a waste of words to attempt to prove that the proceedings of a Court of limited jurisdiction, and in a case clearly without its jurisdiction, are absolutely void, and may be so declared, whenever the question is presented, whether directly or collaterally."—Also, *McCormick* vs. *Sullivan*, 10 W., 192; *Kempe's Lessee* vs. *Kennedy*, 5 C., 173.

IV. If the order of the Court of Probate is void, the transfer made under it is illegal.

V. If the transfer is illegal, no property passed by it, and the bank is liable to the owners.—Ang. and Ames on Corp., § 582.

"A forged letter of attorney is, as to the owner, the same as no letter of attorney; consequently his stock, which has been transferred from him without any authority at all, ought to be restored to him."—*Hildyard* vs. *South Sea Company and Keate*, 2 P. Wms., 76. In this case the company was decreed to restore his stock to the plaintiff. "I (Lord Chancellor) am of opinion that the company must sustain the loss. A trustee, whether a private person or body corporate, must see to the reality of the authority empowering them to dispose of the trust money; for if the transfer is made without the authority of the owner, the Act is a nullity, and in consideration of law and equity, the rights remain as before."—*Ashby* vs. *Blackwell*, 2 Eden. Ch. R., 299.

The only question in this case was who should be liable, and it was decreed that the company should restore to plaintiff her stock, and pay to Blackwell the amount he had paid for the stock.

" It is the duty of the bank to prevent the entry of a transfer until they are satisfied that the person who claims to be allowed to make it is duly authorized to do so. They may take reasonable time to make inquiries and require proof that the signature to a power of attorney is the writing of the person whose signature it purports to be. It is the bank, therefore, and not the stockholder, who is to suffer, if, *for want of inquiring*, they are imposed upon, and allow a transfer to be entered in their books, made without a proper authority. We cannot do justice to this plaintiff, unless we

hold that the stocks are still his."—*Davis* vs. *the Bank of England*, 2 Bing., 393.

"If a bank permit an executor to make a transfer of its stock, in violation of his trust, it is affected with notice of the breach of trust, and liable for the stock to the person enitled under the will." *Lowry* vs. *Commercial and Farmers' Bank*, 3 Am. L. J., 3 ; Brightly's Fed. Dig., 93.

"A bank which has permitted a transfer of stock, owned by a stockholder, upon a forged power of attorney, and has cancelled the original certificates, may be compelled to issue new certificates, and if it has no shares which it can so issue, to pay them the value thereof."—*Pollock* vs. *The National Bank*, 7 N. Y. Rep., being 3 Selden, 274.

VI. It cannot be contended that these certificates were put upon the market by Mr. Carroll, executor, by his blank endorsement.

(1.) Blank endorsement does not make certificates of stock negotiable.

"It is clear that a certificate of stock transferred in blank is not a negotiable instrument."—*Sewall* vs. *Boston Water Power Company*, 4 Allen, 282.

Each of these certificates is expressed on its face to "be transferable only on the books of the company," &c. "No commercial usage can give to such an instrument the attributes of negotiability." "The fact that it is usual for dealers in stock to take certificates with blank transfers upon them, and to fill them up with the names of purchasers, was wholly immaterial. Such a practice, as we have already observed, does not make the shares negotiable, and the purchaser whose name is written into the transfer must always derive his title immediately and solely from the stockholder of record."— *Shaw* vs. *Spencer*, 8 Am. Law Reg., 222.

(2.) Because, according to Mr. Buist's testimony, no transfer of these certificates were made by Mr. Carroll to any one. They were in Mr. Buist's hands as attorney for Carroll, and Buist's possession was Carroll's. They were given by Buist to Messrs. Whaley, Mitchell & Clancy, one year after Carroll's discharge.

1. In answer to the position that the executor, Carroll, disposed of this stock before his power over the estate, as executor, ceased, we say : That the executor merely endorsed the certificates for convenience, and not with the intention to transfer. He never did transfer them to any one, but left them in the hands of his attorneys, with blank endorsement ready for transfer, but he still re-

tained possession of them, for the possession of his attorneys was his possession.

2. In answer to the position that *quoad* this stock, the executor's powers never were revoked, we say: That the decree of June 17, 1868, discharges him *absolutely* as executor, and this would revoke his power over *all* the stock, though none had been specifically named.

3. In reference to the testimony to the effect that, "according to the custom of trade, certificates of stock endorsed in blank are transferable by delivery," we have only to say: That all the authorities agree that only an *equitable* interest passes, good as between vendor and vendee, but no more—a simple right to complete the *legal* transfer.

May 6, 1872.   The opinion of the Court was delivered by

WRIGHT, A. J.   It appears that John L. Francis, at the time of his death, in 1865, was possessed of the shares referred to in the complaint, which stood on the books of the defendant in his name. He left a will, of which Charles R. Carrol qualified as executor, and as such executor, in 1866, endorsed in blank the certificates of said stock, with other stocks which he held in right of the testator, and delivered the same to his attorneys, Buist & Buist, who were to manage the business of the whole estate.   In June, 1868, under a bill in which the said executor was plaintiff, and Grace Alston and others were defendants, the prayer of which does not appear in the brief with which we have been furnished, an order was passed directing the plaintiff to transfer and deliver to the Master the cash and certain enumerated securities in his hands.   Amongst these, the stock of the Bank of Charleston was not named.   The order concludes with the following words :   "And that thereupon he be discharged from all further accountability and liability whatsoever as executor of John L. Francis, deceased."   In June, 1869, Whaley, Mitchell & Clancy, representing the residuary legatees of Francis, receipted to Buist & Buist for certificates for fifty old shares of Bank of Charleston, S. C., for fifty new shares of said bank, and for fifty shares of Charleston Insurance and Trust Company, all belonging to estate of John L. Francis.   In October, 1869, the certificates of bank stock were brought to the bank by *bona fide* purchasers, without notice of any defect or objection, to be transferred. The certificates bearing on their face that the shares "were transferable only on the books of the said bank, by John L. Francis or

his attorney," the bank declined to make the transfer until the authority of the Probate Judge to the executor to transfer, was produced. In December, 1869, the bank, on the presentment of the certificates of Robert Buist, Esq., Probate Judge for Charleston County, that the executor, Carroll, had leave to sell and transfer the said stock in person or by attorney, transferred the same to the purchasers.

On the 18th day of March, 1870, on a petition in the equity suit already referred to, of *Carroll, Executor*, vs. *Grace Alston and others*, by this plaintiff and certain residuary legatees of John L. Francis, he, the said plaintiff, was appointed Receiver of the estate of the said testator. We have not been furnished with a copy of this order, and must therefore assume that it simply appointed him Receiver without reference to any particular fund, and without any conditions or limitations. The plaintiff by his complaint in the Court below demanded judgment against the defendant: "First, for fifty whole shares and fifty half shares of capital stock of the said bank, to be issued in the name of John L. Francis, to the plaintiff, as Receiver of the estate of the said John L. Francis; or, second, for the sum of $7,500, the value of the said shares owned by the said John L. Francis, and the costs of the suit." The Court instructed the jury " that the certificate of the Judge of Probate was illegal, and therefore void, and was no protection to the bank in the transfer of the stock ; that the Bank of Charleston had constructive notice of the illegality. That when the transfer was first applied for without the certificate of the Judge of Probate, and the bank requiring such a certificate before they would make the transfer, they were put upon their guard. That there was never any sale of stock by Carroll, the executor; that he had ceased to be the executor for more than twelve months when the order of the Judge of Pobate was obtained for the sale of the stock." The jury were instructed to find a verdict for the plaintiff, which they accordingly did, in the sum of $1,500, besides costs. The exceptions by the defendant to the charge of the Judge constitute the grounds of appeal here. The argument on the part of the plaintiff resisting the motion to set aside the judgment, and for a new trial, proceeds upon the illegality of the transfer of the stock. That, therefore, no property passed. That he is to be considered, by his complaint, as simply asking that the bank be compelled to recognize him as owner thereof. This is not consistent with the nature of his complaint, which demands judgment for the fifty shares and fifty half shares to be delivered to him as

such Receiver, or for the value of the said shares owned by the said Francis. The first seeks a new issue of such stock, and the second is in the nature of a separate action for a breach of duty in permitting the transfer. In what view of the case, as understood from the complaint, the particular verdict was rendered, we are at a loss to perceive. Viewing the case in the light most favorable to the plaintiff, and that in which he desires it to be regarded, if it can be made to appear that the transfer was illegal, the parties to whom the certificates were passed acquired no title, and the bank would be bound to recognize this plaintiff as the lawful owner.

The illegality of the transfer by the bank is referred to the want of title in Carroll as executor at the time it was made, and this is claimed by virtue of the order of June 17th, 1868, " discharging him from all further accountability and liability whatever as executor of John L. Francis, deceased." Did this operate in effect as a revocation of his letters testamentary, or discharge Carroll from his office as executor? Doubtless the Court of Equity has the power to enjoin an executor from interfering with assets of his testator ; to appoint a receiver to take charge of the property of the estate where there is danger of its being lost or wasted ; confide this trust to more than one, and divide amongst several the discharge of the duties which appertain to an executor. But it never undertakes to discharge him from his office, for it is without power to appoint his successor ; and although it may regulate his action in regard to the estate, it never acts directly on the office. In *Osborne et al.* vs. *Black et al.*, Sp. Eq., 435, Ch. Johnson, delivering the opinion of the Court, says, in relation to a discharge by an Ordinary, on the renouncement of an executor, " Neither the Ordinary nor any other tribunal has any such power. The Courts of Equity do exercise the power of taking the assets out of the hands of any executor where they are in danger of being wasted, but it has no power to discharge him from liabilities incurred, or to deprive him of rights which he has acquired in the discharge of the duties of an executor." The order referred to must have proceeded upon the ground that no assets, save those named in it, had ever come to his hands in the course of admininstration. No matter how comprehensive the words, or their purposes, as to a discharge of all farther accountability whatsoever as executor of Francis, the order never could be effective to shield him from a liability outside of the assets which he was by it directed to transfer to the Master of the Court. Was it to discharge him from the

creditors of Francis, none of whom were parties to the bill? If the existence of the stock now in dispute had not been known to the legatees of Francis, until brought to their notice by the transfer by the bank after the order, with the facts of its loss or depreciation by the negligence of Carroll, would the order be held to discharge him from the consequence of such loss; or even if the order had succeeded his accounting, could it bar the demand for an account of funds retained by him without the knowledge of the parties entitled to the estate? If the order is to be held as a conclusive discharge of Carroll, divesting him of all title to the property of the estate, and as no Receiver was appointed until 1870, in whom was the legal title of the stock in the meantime? It must have rested in some one, and if not in Carroll, in whom? While a mere equitable interest in bank stock may pass by a transfer of certificate from hand to hand, the legal interest in the stock in question could only be transferred on the books of the bank by Francis himself, in his lifetime, or his attorney, and since his death by his legal representative. There is no proof of any notice by the bank of any equity by which the legal title to the stock was affected. It exercised all the care and caution demanded by a due regard to its own interest and that of the stockholders, in whose name the certificate had issued. When it was presented, in October, 1869, with the transfer, by the executor, to the parties who exhibited it, the bank, as we are obliged to suppose, in view of the Act of 1824, 6 Stat., 238, which required the order of the Court of Ordinary to give validity to a sale by an administrator or executor, unless directed by the will, declined to make the transfer until the evidence of the authority of the executor was furnished, and on such evidence being furnished in writing, it made the transfer. The assignment was by the executor having the legal title, and with no imputation against the bank of fraud, complicity, or knowledge of any design on the part of the executor, to convert the proceeds to a use inconsistent with the will; it is, nevertheless, asked that the bank should be compelled to recognize the plaintiff as the owner of the stock. In that event, what becomes of the stock owned, as appears by the books of the bank, by the parties to whom the executor transferred? Are the plaintiff and purchasers all stockholders of this bank through the same stock, and to receive a double dividend? The purchasers are not parties here, and no judgment in this case can reach them. If the plaintiff, as to this stock, has any

rights on behalf of the legatees or creditors of Francis, against others than the bank, he must pursue them as he may be advised.

It is ordered that the judgment be set aside, and a new trial granted.

*Moses*, C. J., and *Willard*, A. J., concurred.